UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| United States of America | ) | |
| | ) | |
| v. | ) | USDC No. 22-cr-207-02(CRC) |
| | ) | |
| Matthew Bokoski, *defendant*. | ) | |

DEFENDANT'S SENTENCING MEMORANDUM

Defendant, through undersigned counsel Nathan I. Silver, II, Esq., appointed by this Court under the Criminal Justice Act, submits this memorandum to aid at sentencing on January 17, 2023 at 11 o'clock a.m. when he appears in-person before the Court for his sentencing hearing.

1. The defendant was arrested on May 25, 2022, in criminal complaint 22-mj-108-02 (RMM) issued in this case, charged along with his father, Bradley Bokoski.   He appeared initially on June 7, 2022, before Magistrate Zia M. Faruqui, when he was released on his own recognizance with conditions. (ECF Doc. 17, June 7, 2022)  Since then, he has been in compliance with the terms Judge Faruqui imposed.

2. The defendant stands charged, first in a criminal complaint, later in a criminal Information filed on June 6, 2022 (ECF Doc. 10) with four misdemeanor offenses resulting from his involvement in the Capitol Hill protests and riot of January 6, 2021: (a) Entering and Remaining in a Restricted Building (Count One), in violation of 18 U.S.C. §1752(a)(1); (b) Disorderly and Disruptive Conduct Which Impedes the Conduct of Government Business, in violation of 18 U.S.C. §1752(a)(2); (c) Disruptive Conduct in the  Capitol Buildings, in violation

of 40 U.S.C. 5104(e)(2)(D), and (d) Demonstrating, Picketing or Parading in a Capitol Building, in violation of 40 U.S.C. 5105(e)(2)(G) ("Demonstrating").

3.  On October 13, 2022, per a Plea Agreement with the United States, the defendant entered a plea of guilty to Demonstrating, a petty offense which carries a maximum sentence up to six (6) months imprisonment, a fine of up to $5,000, a term of probation not to exceed five (5) years and a $10 special assessment.  As a petty offense, the U.S. Sentencing Guidelines do not apply. (Presentence Investigation Report ("PSI"), page 7, ¶31)  The defendant agreed to pay $500.00 in restitution toward defraying the cost of repairing damage to the U.S. Capitol, repairs which were necessary after the riot.

4.  Defendant and his counsel have reviewed the draft PSI (ECF Doc. 35) and lodged no objections to it.

5.  While in the Capitol or on its grounds, the defendant did not commit any violent or destructive act, either to persons or property.  Nor did he encourage his father (and codefendant) or unknown others to do so.

6. The defendant has no record of criminal arrests, convictions, or pending charges.  (PSI, pp. 7, ¶¶32-37)

7.  The defendant's conduct consisted of traveling to Washington to attend the "Stop the Steal" rally on the Ellipse on January 6.  He took part in a demonstration, the purpose of which was to show support for then-President Trump.  When the rally concluded, the defendant and his father walked towards the U.S. Capitol building.  They joined a large crowd that was gathered on the restricted grounds.  After taking photos of police lines and protesters climbing scaffolding that had been erected near the inaugural stage,  the two moved with the crowd to the Upper West

Terrace where a large group of protesters had gathered near the Senate Wing Doors and the

Senate Parlimentarian's door.  About five minutes after rioters breached the Parlimentarian door,

the defendant and his father entered the Capitol through that entrance.   They spent about five

minutes inside before leaving.

9. Defendant submits that his conduct was disruptive, though not purposely,  but

incidentally.  It was not to cause trouble or interfere with the certification of the electoral votes

for the president-elect that he and his father came to D.C. on January 6th; it was simply to attend

a rally and a peaceful protest.  He, like hundreds of others, entered the Capitol after others had

breached it; there's no reason to think that he or his father, both law abiding citizens, would have

broken windows or attacked police in order to enter.  Rather, they took advantage of an

opportunity created by others.  The Capitol Police and Metropolitan Police Department officers.

whose job it was to keep the Capitol secure and closed to unauthorized persons, were overrun by

those who violently breached the building.  The defendant, out of curiosity as much as anything

else, went inside the Capitol, and while there acted peacefully and respectfully.  He caused no

injury to persons or property.[1]  Yet the defendant recognizes regrettably that his presence likely

hampered the efforts of the police, whose hands were more than full, to keep order.[2]

---

[1] Contrast the conduct of those who entered the Capitol, albeit when the Capitol was open, to protest the nomination of Brett Kavanaugh to the Supreme Court.  Their stated purpose, planned in advance, was to disrupt the hearings, which they did.  All but one of the protesters were charged under D.C. Code statutes, not federal law. For a discussion of this, see Defendant's Sentencing Memorandum, *United States v. Jenny Cudd,* 21-cr-0068 (TNM), pp. 49-54.  Ms. Cudd made a number of inflammatory statements and 19 minutes inside the Capitol.  She pled guilty to Entering and Remaining on a Restricted Building or Grounds, a Class A misdemeanor and guideline offense in violation of 18 U.S.C. 1752(a)(1), and was sentenced to two (2) months probation, a $5,000.00 fine and $500.00 in restitution.  Defendant acknowledges that the appalling nature of the events of January 6 was different in kind from that involved with  the Kavanaugh hearings.

[2] While inside, the defendant's father asked an officer if he could use a restroom in the building.  The officer politely said no, but directed him to a restaurant about two blocks away where, the officer assured, he would be able to use the facilities.

10.  The defendant has coöperated with investigators from the moment he became a suspect and were later arrested.  In fact, on January 14, 2021, eight days after the riot, the FBI interviewed him at his job about his having been in Washington and entered the Capitol on the 6th.  The agents were interested in material – photos and videos, mostly – he had posted on social media, in this case Facebook, and he provided everything to them by the end of the day, as they had requested.  The defendant had taken photos and posted them as a record of what he observed that day, not to incite others or to justify his own conduct.[3]

11.  The defendant asserts that his cooperation with investigators and taking of responsibility in pleading guilty are themselves expressions of contrition and remorse.

12. Under 18 U.S.C. §3553(a) the following factors: (a) Factors To Be Considered in Imposing a Sentence. - The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider - (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed - (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner….

10.  The government recommends a sentence of fourteen (14) days incarceration, three (3) years probation, sixty (60) hours of community service and the payment of $500.00 in

---

[3] *See* Exhibit 1, Affidavit of FBI Special Agent Brian  W. Kimball in support of Criminal Complaint, ECF Doc. 1, page 3, filed May 16, 2022.

restitution, an amount the defendant has already agreed to pay. (ECF Doc. 51, page 1)  The U.S.

Probation Office recommends a sentence of three (3) years probation, with no term of

incarceration. (ECF Doc. 45, page 1)

11. The defendant is a hard-working assistant produce manager for a large supermarket in

his hometown of Chicago.  In the past he has worked security for both a local security firm and

as campus safety officer for DePaul University. (PSI, page 10, ¶¶53-56)  He's the very model of

a law-abiding citizen.

12. The defendant submits that a period of probation, in lieu of incarceration, combined if

necessary with community service, would satisfy the "need for the sentence…to reflect the

seriousness of the offense, promote respect for the law, and provide just punishment for the

offense."  During this time, the defendant would be answerable to the U.S. Probation Office. He

would be subject to the jurisdiction of the Court, knowing that any infraction could lead to

revocation of the probationary term, with incarceration to follow.  Such a term would at the same

time provide deterrence specific to the defendant, operating as a disincentive to further criminal

behavior.

13.  A term of probation would also deter generally.  The public is aware, from the

comprehensive coverage of the January 6 events and the arrests that followed, of the serious

efforts the government has made to prosecute persons involved with the protests and, in many

cases, the violence that was perpetrated.  These cases, from beginning to end, have been watched

very closely by the press where defendants live, so the public will be aware of the defendant's

responsibility for his conduct.  That can serve to deter others in the future in similar situations.

13.  The defendant submits that a probationary term would satisfy the various §3553 factors.  The Court may also impose, and the defendant is amenable to a requirement of community service.   Last, in the event that this Court believes that incarceration, not probation, is appropriate, the defendant requests that the Court permit him to serve his time in home confinement, with an exception for employment outside the home.

14. The defendant was required to remove his firearms from his residence when ordered to do so as a condition of release, first in Illinois, then here.  (ECF Docs. 7, page 20, ¶7(k) and 17, ¶7(k), page 2)  He lawfully possesses those weapons by holding a State of Illinois FOID (Firearms Owner's ID) card.  Moreover, as noted *supra*, he has served as a security officer in previous employment and is conversant with the responsible use and care of firearms.  The defendant requests that this condition be lifted so that he may possess his firearms during any period of probation.

15. For all the reasons noted above, the defendant respectfully requests a sentence of probation combined with community service.

This pleading is,

Respectfully submitted,

/s/

NATHAN I. SILVER, II
Unified Bar #944314
6300 Orchid Drive
Bethesda, MD 20817
(301) 229-0189 (direct)
(301) 229-3625 (fax)
email: nisquire@aol.com

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing pleading has been served via ECF on Lynnett M. Wagner, Esq., USAO-U.S. Attorney's Office (Omaha, Nebraska) this 11th day of January, 2023.

/s/

_____

*Nathan I. Silver, II*